UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:25-CV-00174-GNS

R.G.R.                                                                    PETITIONER

v.

SAMUEL OLSON, Field Office Director,
Chicago Field Office, Immigration and
Customs Enforcement, in his official capacity;
KRISTI NOEM, Secretary, U.S. Department
of Homeland Security, in her official capacity;
TODD D. LYONS, Acting Direct of U.S.
Immigration and Customs Enforcement,
in his official capacity;
PAMELA BONDI, U.S. Attorney General,
in her official capacity; and
JASON WOOSLEY, Jailer,
Grayson County, Kentucky,
custodian of detainees of the
Grayson County Detention Center                                          RESPONDENTS

**ORDER**

This matter is before the Court on the Petitioner's Petition for Writ of Habeas Corpus (DN 1) and Respondents' Motion for Leave to Seal (DN 14). The Court held a show cause hearing on December 16, 2025, and the parties filed supplemental briefs (DN 21, 22).

**A.    Background**

In October 2021, Petitioner R.G.R. ("R.G.R."), who is a native and citizen of Venezuela, entered the United States and was served with a Notice to Appear, which was never filed with the Executive Office for Immigration Review. (Pet. ¶ 30, DN 1; Resp'ts' Resp. Show Cause Order Ex. 1, at 2, DN 14-1). Within one year of arrival, R.G.R. timely filed an application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). (Pet. ¶ 30).

On September 2, 2023, R.G.R. was arrested and charged with the crime of felony third-degree grand theft in Florida. (Pet. ¶ 31; Pet. Ex. D, at 6, DN 1-5). The Florida case is still pending. (Pet. ¶ 31; Pet. Ex. D, at 6). Then, on April 23, 2024, R.G.R. was detained in Kenton County, Kentucky, and was charged with criminal possession of a forged instrument in the second degree (complicity). (Pet. ¶ 32; Pet. Ex. D, at 7). She later pleaded guilty to this class D felony and agreed to a pretrial five-year diversion program. (Pet. ¶ 32; Pet. Ex. D, at 7).

On September 25, 2024, R.G.R. was detained by Immigration and Customs Enforcement ("ICE") pursuant to 8 U.S.C. § 1226 and initially housed at the Boone County Jail in Kentucky. (Pet. ¶ 33; Resp'ts' Resp. Show Cause Order Ex. 3, at 1, DN 14-3; Resp'ts' Resp. Show Cause Order Ex. 4, at 1-4, DN 14-4). She was later transferred to the Grayson County Detention Center where she is currently being housed. (Pet. ¶ 33).

On October 21, 2024, an immigration judge denied R.G.R.'s *pro se* request for bond because of 2024 Kentucky conviction. (Resp'ts' Resp. Show Cause Order Ex. 5, at 1-2, DN 14-5). In early 2025, R.G.R.'s counsel moved for reconsideration of the bond determination, which was denied on January 13, 2025. (Pet. ¶ 45; Resp'ts' Resp. Show Cause Order Ex. 6, at 1, DN 14-6)

On May 12, 2025, an immigration judge denied R.G.R.'s application for asylum, granted her withholding of removal under INA § 241(b)(3), and ordered the withdrawal with prejudice of her withholding of removal under the CAT. (Pet. ¶ 5; Pet. Ex. A, at 1, DN 1-2). It was ordered that R.G.R. was to be removed to Venezuela. (Pet. ¶¶ 5, 79; Pet. Ex. A, at 3).

On September 24, 2025, R.G.R. moved to reopen and stay removal, which was granted. (Pet. ¶¶ 39-40; Pet. Ex. B, at 1-18, DN 1-3; Pet. Ex. C, at 1, DN 1-4). The matter was set for a hearing on November 14, 2025, to allow R.G.R. to file an application for withholding of removal

and CAT relief as to Mexico.  (Pet. ¶ 40).  Prior to that hearing, R.G.R. filed an application for withholding of removal and CAT relief as to Mexico.  (Pet. ¶ 40).  The hearing on the application was set for December 6, 2025, but R.G.R.'s matter was rescheduled for January 6, 2026, master calendar hearing.  (Pet'r's Reply Show Cause Order 6, DN 22).

R.G.R. filed the Petition for Writ of Habeas Corpus against Respondents:  Sam Olson, Chicago Field Office Director for ICE; Kristi Noem, Secretary of the Department of Homeland Security; Todd Lyons, Acting Director of ICE; Pamela Bondi, Attorney General of the United States; and Jason Woosley ("Woosley"), as Grayson County Jailer.[1]  (Pet. ¶¶ 18-22).  In the Petition, she challenges her continued detention and alleges violations of her due process rights under the Fifth Amendment, the Immigration and Nationality Act, CAT and its implementing regulations, and the Administrative Procedure Act.  (Pet. ¶¶ 87-103).

A.    **Petition for Writ of Habeas Corpus**

A writ of habeas corpus "may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."  28 U.S.C. § 2241(a). Section 2241 "is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting 28 U.S.C. § 2241(c)).  In seeking habeas relief, R.G.R. bears the burden of proving by a preponderance of the evidence that her detention is unlawful.  *See Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023); *Lallave v. Martinez*, 609 F. Supp. 3d 164, 171 (E.D.N.Y. 2022).

---

[1] "In Kentucky, the Jailer—a constitutionally elected county official—has 'custody, rule and charge of the jail' or detention center in his or her county and 'of all persons in the jail.'" *Moore v. Mason Cnty.*, No. 16-185-DLB-CJS, 2018 WL 4211732, at *1 (E.D. Ky. Sep. 4, 2018) (citing Ky. Const. § 99; KRS 71.020).  Therefore, as the jailer, Woosley is responsible for the jail or detention center and has custody of any detainee while he or she is incarcerated at that facility.

### 1.    *Exhaustion of Remedies*

Many cases decided by courts within the Sixth Circuit has considered whether a petitioner must exhaust administrative remedies before seeking relief under Section 2241. Based on the reasoning articulated in *Edahi v. Lewis*, No. 4:25-CV-00129-RGJ, 2025 WL 3466682 (W.D. Ky. Nov. 27, 2025), the Court waives any exhaustion requirement for the same reasons in the case sub judice. *See id.* at *2-3.

### 2.    *Detention*

The crux of R.G.R's request for relief is whether she has been subjected to prolonged unlawful detention pending her removal from the United States. Consideration of the Petition requires a review of the facts in the record and an analysis of 8 U.S.C. §§ 1226 and 1231, which have both applied to R.G.R. during different parts of her detention since September 2024. (Resp'ts' Resp. Show Cause Order 6, DN 13).

Section 1226 creates two categories of removable aliens—one under Section 1226(a) and the other Section 1226(c). "[A]n alien detained under § 1226(a) must be afforded a bond hearing before an immigration judge to determine if the alien's detention is necessary while he or she awaits immigration proceedings." *Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208, 214 (citing *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018); 8 C.F.R. § 236.1(d)(1)). Under Section 1226(c), however, the detention of aliens is mandatory when they have been convicted of certain specified crimes, and no hearing is required prior to or during detention.[2] *See* 8 U.S.C. § 1226(c); *see also Jennings*, 583 U.S. at 289 ("Under § 1226(c), the 'Attorney General shall take into custody any alien' who falls into one of several enumerated categories

---

[2] In particular, the specified crimes involve "committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . ." 8 U.S.C. § 1226(c)(1)(E)(ii).

involving criminal offenses and terrorist activities.  § 1226(c)(1).  The Attorney General may release aliens in those categories 'only if the Attorney General decides . . . that release of the alien from custody is necessary' for witness-protection purposes and 'the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.'" (alteration in original) (quoting 8 U.S.C. § 1226(c)(2))).  In this matter, there appears to be no dispute that R.G.R. is subject to mandatory detention pursuant to Section 1226(c).

In contrast to Section 1226, Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."  8 U.S.C. § 1231(a)(1)(A).  "During the removal period, the Attorney General shall detain the alien."  *Id*. § 1231(a)(2)(A).  This statute further provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

When R.G.R. was initially detained on September 25, 2024, her detention was pursuant to Section 1226(c).  When the immigration judge issued the final order of removal to Venezuela on May 12, 2025, R.G.R. was being held pursuant to Section 1231.  Then, on September 24, 2025, the immigration judge granted her motion to reopen, and she was reinstated to the same status as during her terminated removal proceedings when she was detained pursuant to Section 1226(c).  *See Hango v. Nielson*, No. 1:19-CV-606, 2020 WL 5642112, at *5 n.6 (N.D.

Ohio Sep. 22, 2020) ("It is only when a motion to reopen is *granted* that a final removal order is vacated." (citing *Bronisz v. Ashcroft*, 378 F.3d 632, 637 (7th Cir. 2004))).

It is true that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 531 (2003). Nevertheless, the Fifth Amendment's Due Process Clause applies to all persons, including non-citizens, regardless of their immigration status. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025); *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993))). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action. 'It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'" *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (internal citation omitted) (citing *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982)). "'In our society liberty is the norm,' and detention without trial 'is the carefully limited exception.'" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (citation omitted).

In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court rejected a claim by a detainee that his six-month detention pursuant to Section 1226(c) violated his due process rights. The Court reasoned that "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Id.* at 522 (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)). It noted that detention pending removal "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Id.* at 528. Finally, the Supreme Court explained that

detention under Section 1226(c) has "a definite termination point, in the majority of cases it lasts for less than the 90 days we considered presumptively valid in *Zadvydas* [*v. Davis*, 533 U.S. 678 (2001)]." *Demore*, 538 U.S. at 529.

In determining whether R.G.R.'s continued detention violates her due process rights, the Court will apply the three-part balancing testing articulated in the *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See M.T.B. v. Byers*, No. 2:24-028-DCR, 2024 WL 3881843, at *3-4 (E.D. Ky. Aug. 20, 2024) (applying the *Mathews* test in analyzing whether a prolonged detention pursuant to Section 1226(c) violated the alien's due process rights). The factors to be considered are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

### a.       Private Interest

"[W]hen assessing the private interest, courts consider the detainee's conditions of confinement, namely, 'whether a detainee is held in conditions indistinguishable from criminal incarceration.'" *Martinez v. Noem*, No. 5:25-CV-01007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sep. 8, 2025) (quoting *Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025)). In particular, the issue here is whether R.G.R. has been unreasonably prolonged detention, which is necessarily a fact-specific inquiry. *See Van v. Oddo*, No. 3:25-CV-00322, 2025 WL 3492736, at *6 (W.D. Pa. Dec. 5, 2025) (citation omitted).

From the time of her detention on September 25, 2024, until an immigration judge ordered her removal on May 12, 2025, R.G.R. had been detained for 228 days pursuant to

Section 1226(c). From May 12, 2025, until her motion to reopen her removal proceedings was granted on September 24, 2025, she was held for an additional 135 days pursuant to Section 1231. Then, from September 24, 2025, until the filing of the Petition on December 8, 2025, she was detained for an additional 75 days pursuant to Section 1226(c). Since initially being detained by ICE, she had been held 439 days (or over 14 months) as of the date of the Petition, and as of the time of this decision, 90 more days have passed, bringing the length of R.G.R's detention to more than 530 days or over 17 months.

In analyzing whether the detention was prolonged, it is important to note that R.G.R. has exercised her right to challenge her removal, which necessarily has extended her detention. *See Demore*, 538 U.S. at 530-31 ("Respondent was detained for somewhat longer than the average—spending six months in INS custody prior to the District Court's order granting habeas relief, but respondent himself had requested a continuance of his removal hearing."). There is an absence of evidence, however, that R.G.R. acted in bad faith in seeking to delay her removal. *See Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) ("[A]ppeals and petitions for relief are to be expected as a natural part of the process. An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him. Further, although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take. The mere fact that an alien has sought relief from deportation does not authorize the INS to drag its heels indefinitely in making a decision. The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability."), *abrogated on other grounds by Jennings*, 583 U.S. at 288. Therefore, based upon R.G.R.'s continued detention of about 17 months, this factor weighs in her favor. *See Van*, 2025 WL 3492736, at *6 ("The Court recognizes that Van's

8

15-month detention without a bond hearing falls well within the range where courts have held that delays start to become unreasonable." (citing *Zadvydas*, 533 U.S. at 701; *Jennings*, 583 U.S. 281; *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210 (3d Cir. 2020))

### b.    Risk of Erroneous Deprivation

Under the second factor, a court must "assess whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Günaydin*, 784 F. Supp. 3d at 1187. As a sister court has noted:

> Notably, the procedural protections in place for aliens detained under § 1226(c) are "almost nonexistent," as they provide no individualized review of the need for detention and no mechanism for the detainee's release. Instead, the only procedural protection available appears to be the alien's ability to contest that he committed the crime that renders him subject to mandatory detention.

*M.T.B.*, 2024 WL 3881843, at *3 (internal citation omitted) (citing *Black v. Decker*, 103 F.4th 133, 151 (2d Cir. 2024)). Because R.G.R. pleaded guilty to a class D felony to which she was sentence to five years of diversion, she cannot challenge whether she committed the crime. "In the absence of any meaningful procedures at the outset of detention, it appears 'that almost any additional procedural safeguards at some point in the detention would add value.'" *M.T.B.*, 2024 WL 3881843, at *3 (quoting *Black*, 103 F.4th at 153).

R.G.R's individual circumstances are also relevant in analyzing the second *Mathews* factor. She has been in the United States since October 2021, and in addition to her 2024 Kentucky felony conviction, R.G.R. has a pending Florida case relating to her arrest for third-degree grand theft from 2023. From the record, it is not clear how the Florida matter will be resolved and whether she has "had an opportunity to demonstrate a tendency toward lawfulness"

before her detention by ICE agents. *M.T.B.*, 2024 WL 3881843, at *4. Nevertheless, this factor leans in R.G.R.'s favor. *See id.*

### c.    United States' Interest

The final factor requires the Court to consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Preventing aliens subject to deportation for fleeing and committal additional crimes is an "important and substantial interests for the government during removal proceedings. But these are the same interests that allow the government to detain an alien for a reasonable period under § 1226(c)." *M.T.B.*, 2024 WL 3881843, at *4. Providing an individualized bond hearing to R.G.R. does not undermine those interests because an immigration judge may still determine that her continued detention is warranted under the specific circumstances of her case. "To continue holding an alien for a period that has become unreasonably prolonged, the government must identify some additional interests that justify doing so without providing the alien a due process hearing." *M.T.B.*, 2024 WL 3881843, at *4. Respondents have not done so in this instance. This final factor weighs in favor of R.G.R. and granting the Petition.

Because the *Mathews* factors weigh in her favor, R.G.R. is entitled to bond hearing due to her prolonged detention. During the hearing, the United States will have the burden of justifying her continued detention by clear and convincing evidence. *See M.T.B.*, 2024 WL 3881843, at *5.

### B.    Respondents' Motion for Leave to Seal

In support of their response to the show cause order, Respondents have filed seven exhibits containing a significant amount of identifying information as to R.G.R., and Respondents seek leave to seal those exhibitions. R.G.R. is proceeding under a pseudonym, and

the need to protect her identify and personal information outweighs the public's interest in having access to those exhibits. This motion is granted.

<strong><u>CONCLUSION</u></strong>

Accordingly, **IT IS HEREBY ORDERED** as follows:

1. The Petition for Writ of Habeas Corpus (DN 1) is **GRANTED**. By **April 10, 2026**, Respondents shall provide R.G.R. with an individualized bond hearing before an immigration judge during which the government will bear the burden to prove by clear and convincing evidence that R.G.R. presents a flight risk and/or is a danger to the community.

2. Respondents' Motion for Leave to Seal (DN 14) is **GRANTED**, and the Clerk shall seal DN 14.

3. The Clerk shall strike this matter from the active docket.

**Greg N. Stivers, Judge**
**United States District Court**
March 11, 2026

cc:    counsel of record

11